1  Joshua W. Carden, SBN 021698
2  CARDEN LIVESAY, LTD.
   419 East Juanita Avenue
3  Building 103, Suite 1
4  Mesa, AZ 85204
   joshua@cardenlivesay.com
5  T. (480) 345-9500
6  F. (480) 345-9559
   *Attorney for Plaintiff*

7

8              IN THE UNITED STATES DISTRICT COURT

9               FOR THE DISTRICT OF ARIZONA

10  Krystle Joy Flanders,

11                      Plaintiff,

12  v.                                    **ORIGINAL COMPLAINT**

13  Thunder Mountain Lodge No. 2475, Loyal
    Order of Moose, and David Plante and Penny
14  Plante, a married couple,

15

16                      Defendants.

17       Plaintiff Krystle Joy Flanders, by and through undersigned counsel, for her Complaint

18  against Defendants alleges as follows:

19                          **THE PARTIES**

20       1.      Plaintiff Krystle Joy Flanders is an individual resident of Pima County, Arizona, and,

21  at all relevant times herein, an "employee" of Defendants..

22       2.      Defendant Thunder Mountain Lodge No. 2475, Loyal Order of Moose ("Thunder

23  Mountain") is a unincorporated employee association and/or fraternal society doing business as

24  a 501(c)(8) tax exempt entity domestic nonprofit corporation associated with Moose International,

25  authorized to do business and doing business in Arizona, and an "employer" of Plaintiff at all

26  relevant times herein.

27       3.      Defendant David Plante is the Administrator of Thunder Mountain and a married

28  resident of Pima County, Arizona.

         4.      David Plante also stood in the status of an "employer" of Plaintiff within the



                                      1

1   meaning and purposes of all relevant statutes at all times material to this action, in that he

2   exercised daily economic control over Plaintiff's (and other employees') employment.

3        5.     Defendant Penny Plante is David Plante's wife and is named herein solely for

4   community property purposes.

5        6.     At all times pertinent to this Complaint, Thunder Mountain's management officials

6   were acting within the course and scope of their employment with Thunder Mountain; and as a

7   result thereof, Defendant Thunder Mountain is responsible and liability is imputed for the acts

8   and omissions of its management officials, as alleged herein, under the principle of *respondeat*

9   *superior*, agency, and/or other applicable law.

10                                **JURISDICTION AND VENUE**

11       7.     This Court has jurisdiction to hear and determine this action and to grant the relief

12   requested pursuant to article 6 § 14(1) of the Arizona Constitution. Venue is proper in this Court

13   as all acts alleged herein occurred in Pima County, Arizona.

14                                  **FACTUAL ALLEGATIONS**

15       8.     Defendants operate a fraternal Lodge associated with Moose International.

16       9.     Ms. Flanders worked in 2020 as a server for Defendants at their lodge restaurant

17   and also at outside events.

18       10.    On or about December 1, 2020, a co-worker of Ms. Flanders texted her that she had

19   COVID-19-like symptoms.

20       11.    Ms. Flanders notified Mr. Plante and he and the co-worker were in agreement that

21   the co-worker would obtain a COVID-19 test.

22       12.    On December 4, 2020, the co-worker showed up for work without having taken a

23   test.

24       13.    On December 5, 2020, the Defendants hosted a charity golf tournament, where no

25   recommended CDC guidelines (i.e. masks, social distancing, regular sanitizing) for handling

26   COVID-19 were followed.

27       14.    Prior to the event, Mr. Plante announced that the Lodge and its members and

28   employees were not going to follow CDC guidelines unless they received an official warning of



1     some kind.

2     15.     The sick co-worker worked this event along with Ms. Flanders and others.

3     16.     On December 7, 2020, a Lodge member informed Ms. Flanders that she had tested

4     positive for COVID-19 and had exposed Ms. Flanders and others at the Lodge.

5     17.     Ms. Flanders immediately made an appointment to be tested, and attempted to

6     contact Mr. Plante by phone and by text to let him know that she had been exposed.

7     18.     Mr. Plante contacted Ms. Flanders and instructed her to work her shift as normal,

8     to log her temperature, and to "keep it between us," or words to that effect.

9     19.     During her shift that evening, Ms. Flanders noticed the husband of the member who

10     had tested positive entering the Lodge.

11     20.     She immediately contacted Mr. Plante, who gave her permission to ask the husband

12     to leave.

13     21.     She did so, and proceeded to sanitize wherever he had been the best that she could.

14     22.     Ms. Flanders went home that night and began to self-quarantine.

15     23.     On December 9, 2020, she was tested to see if she had COVID-19.

16     24.     She texted Mr. Plante that she was developing symptoms and had already arranged

17     to have her next shift covered.

18     25.     On December 11, 2020, her test results came back positive.

19     26.     She posted the result on Facebook.

20     27.     Mr. Plante called and frantically demanded that she take the post down, presumably

21     for fear it would alarm the other Lodge members and hurt business.

22     28.     Ms. Flanders reluctantly agreed to remove the post.

23     29.     On December 12, Ms. Flanders engaged in further communications with Mr. Plante,

24     letting him know that other members were letting her know that they too had contracted COVID-

25     19 and that maybe he should get tested.

26     30.     He instructed her to, *inter alia*, mind her own business.

27     31.     Ms. Flanders filed a report with the Pima County Health Department out of concern

28     for the other members and employees at the Lodge.



32.     On December 22, Ms. Flanders texted Mr. Plante that she was no longer positive for the virus but still suffering symptoms and could not work.

33.     On December 29, Ms. Flanders notified Mr. Plante that she was ready to come back to work.

34.     She also notified him of two missing days of pay from December 6 and 7 from her paycheck.

35.     Mr. Plante responded that she was being placed on "on-call" status only and would be considered a "temporary" employee from that time forward.

36.     Ms. Flanders responded that she would be getting a lawyer involved.

37.     On December 31, 2020, she notified Mr. Plante and Linda Pearce, the bookkeeper responsible for HR and payroll, that under federal law she was supposed to receive sick time for the hours missed during her bout with COVID-19.

38.     She also inquired about future employment and her missing days of pay from December 6-7.

39.     The bookkeeper answered saying that she had already been paid through December7.

40.     Ms. Flanders sent a picture of her paystub showing the period ending as of December 5 and reiterated her inquiry.

41.     She received no further response.

42.     Another employee was hired to work the shifts that Ms. Flanders would have willingly worked.

43.     She was never called for employment by Defendants again.

44.     Defendants materially changed Ms. Flanders' employment status on December 29, 2020, and effectively discharged her on that date.

45.     Upon information and belief, the need for paid sick time and/or Ms. Flanders' unavailability for work due to her diagnosis and quarantine were the reasons Defendants fired her.

46.     Upon information and belief, Defendants counted Ms. Flanders' job in applying for and receiving Paycheck Protection Program loans or other government financial assistance



1    programs provided during the pandemic.

2         47.    Upon information and belief, Defendants have failed to post the required notices to

3    employees under the Family First Coronavirus Response Act (FFCRA), the EPSLA, and

4    Arizona's Paid Sick Time Law.

5         48.    All conditions precedent necessary to the filing of this lawsuit have been performed

6    or have occurred.

7                          **COUNT ONE – UNPAID WAGES**

8         49.    By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

9         50.    Plaintiff worked for two days for which she was inexplicably not paid.

10        51.    Her compensation constitutes "wages" – non-discretionary amounts for which

11   Plaintiff as an employee had a reasonable expectation to be paid.  A.R.S. § 23-350.

12        52.    Defendants, an employer, failed to promptly pay wages due and owing Plaintiff, their

13   employee, in violation of A.R.S. §§ 23-353 and 23-355.

14        53.    Defendants failed to act in good faith and lack reasonable justification for failing to

15   pay Plaintiff.

16        54.    Defendants' failure to pay has caused Plaintiff damages, including treble damages

17   under A.R.S. § 23-355.

18   **SECOND CAUSE OF ACTION - EMERGENCY PAID SICK LEAVE ACT**
19                          **DISCRIMINATION**

20        55.    By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

21        56.    The FFCRA included the Emergency Paid Sick Leave Act, Pub L. 116-127 §§ 5101,

22   *et seq.*, https://www.congress.gov/116/plaws/publ127/PLAW-116publ127.pdf  (not codified in

23   the USC).

24        57.    The EPSLA provides that employers shall provide up 80 hours of paid leave when

25   the leave is because "(2) The employee has been advised by a health care provider to self-

26   quarantine due to concerns related to COVID–19; [or] (3) The employee is experiencing

27   symptoms of COVID–19 and seeking a medical diagnosis." *Id.* § 5102(a).

28        58.    The required amount of pay is defined as the employee's regular rate of pay up to a



1   maximum of $511 per day. *Id.* § 5510(5).

2   59.   The EPSLA applies to both Plaintiff as a qualifying "employee" and Defendants as

3   qualifying "employers."

4   60.   The EPSLA forbids employers from requiring the use of "other paid leave" – such

5   as paid leave under Arizona's Paid Sick Time statutes – before using the 80 hours provided under

6   the EPSLA. *Id.* § 5102(e)(2)(b).

7   61.   The EPSLA also forbids employers to "discharge, discipline, or in any other manner

8   discriminate against any employee who—(1) takes leave in accordance with this Act[.]" *Id.* § 5104.

9   62.   Defendants violated the EPSLA by a) failing to pay Ms. Flanders the leave; and b)

10   terminating her for using the leave.

11   63.   The EPSLA incorporates the remedies for FLSA violations, including damages,

12   liquidated damages, fines and penalties. *Id.* § 5105.

13   64.   Defendants' violation of the EPSLA was committed without good faith.

14   65.   Thus, Defendants owe Plaintiff two weeks of regular pay under the EPSLA, plus an

15   equal additional amount as liquidated damages.

16   66.   Defendants further owe Plaintiff economic damages (i.e. lost wages and benefits) for

17   the unlawful termination, plus an equal amount as liquidated damages.

18   67.   Plaintiff is further entitled to equitable relief as determined by the Court.

19
20   **THIRD CAUSE OF ACTION – VIOLATION OF ARIZONA PAID SICK TIME LAW**

21   68.   By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

22   69.   Arizona has adopted a Paid Sick Time law, A.R.S. §§ 23-371, *et seq*.

23   70.   A.R.S. § 23-364(B) states:

24
25   No employer or other person shall discriminate or subject any person to retaliation for asserting any claim or right under this article, for assisting any other person in doing so, or for informing any person about their rights.  Taking adverse action against a person within ninety days of a person's engaging in the foregoing activities shall raise a presumption that such action was retaliation, which may be rebutted by clear and convincing evidence that such action was taken for other permissible reasons.

26
27
28

71.     Defendants violated A.R.S. § 23-364 as described herein, by terminating Plaintiff for asserting her right to take sick leave and while taking sick leave.

72.     Additionally, upon information and belief, Defendants failed to provide notice of Plaintiff's rights under A.R.S. 23-364 as required by law.

73.     A.R.S. § 23-364(C) authorizes a private right of action for any private party injured by a violation.

74.     A.R.S. § 23-364(G) mandates a remedy of an amount "sufficient to compensate the employee and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued or until legal judgment is final."

75.     Defendants' discrimination and/or retaliation were committed without justification or excuse.

76.     As a direct result of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial, but not less than $150.00 per day until final judgment, and the failure to post and keep proper records penalties under § 23-364(F).

## DEMAND FOR JURY TRIAL

77.     Plaintiff hereby demands trial of all claims by jury to the extent authorized by law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

A. Declaring that the acts and practices complained of herein are in violation of federal and/or state law;

B. Assessing applicable civil fines and penalties against Defendants as authorized under the statutes cited herein;

C. Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment or employment opportunities;

D. Directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' unlawful actions, and make her whole for all earnings she would have received, including, but not limited to, back pay, front pay, pension, and other lost benefits;



E.  Awarding Plaintiff compensatory damages in an amount to be determined by the jury;

F.  Awarding Plaintiff statutory and liquidated and treble damages in an amount to be determined by enforcement of the federal and state statutes herein;

G.  Awarding Plaintiff pre- and post-judgment interest, the costs of this action, and reasonable attorneys' fees as provided by the statutes providing the causes of action cited herein; and

H.  Granting such other and further relief, including equitable relief authorized by the cited statutes, as this Court deems necessary and proper.

Respectfully submitted on this 3rd day of December, 2021,

CARDEN LIVESAY, LTD.

By: s/Joshua W. Carden
Joshua W. Carden
*Attorney for Plaintiff*
*Krystle Joy Flanders*